IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **SCOTT DABNEY and SHELBY DABNEY,** | § | |
| **individually and as next friends of** | § | |
| **MARY KATHERINE DABNEY** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. **3:15-CV-2122-L** |
| | § | |
| **HIGHLAND PARK INDEPENDENT** | § | |
| **SCHOOL DISTRICT and DAWSON ORR,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendant Highland Park Independent School District's ("HPISD")
Motion to Dismiss Plaintiff's Original Complaint (Doc. 6), filed July 17, 2015; and Defendant
Dawson Orr's ("Orr") Motion to Dismiss Plaintiff's Original Complaint (Doc. 8), filed July 17,
2015.  After careful consideration of the motions, pleadings, briefs, and applicable law, the court
**grants** Orr's Motion to Dismiss Plaintiffs' Original Complaint and **grants** HPISD's Motion to
Dismiss Plaintiffs' Original Complaint.

## I.     Factual and Procedural Background

Plaintiffs Scott Dabney ("Scott"), Shelby Dabney ("Shelby"), and Mary Katherine Dabney
("Kate") (collectively, "Plaintiffs") filed this action against HPISD and Orr (collectively,
"Defendants") on June 23, 2015, asserting claims for violations of the Americans with Disabilities
Act ("ADA"); the Rehabilitation Act of 1973 ("Section 504"); the Texas Human Resources Code
("THRC"); and Chapter 29 of the Texas Education Code ("Chapter 29") for failure to provide a
free appropriate public education ("FAPE").  Plaintiffs also assert claims pursuant to 42 U.S.C §

**Memorandum Opinion and Order - Page 1**

1983 for violations of their constitutional right, retaliation, and intentional infliction of emotional distress ("IIED").

Plaintiffs' Original Complaint ("Complaint") alleges the following: Kate is currently a student at Highland Park High School ("high school") operated by HPISD. After Kate had academic problems in the eighth grade, Scott and Shelby (collectively, "the Dabneys") paid for testing to determine if she had a learning disability. Kate was diagnosed with Attention Deficit Disorder ("ADD"), a recognized impairment that interferes with major life activities, in October 2012. In reliance on the test results, HPISD developed a Section 504 Accommodation Plan for Kate on December 11, 2012. Kate was enrolled at the high school during the 2013-2014 for her freshman year. Kate's annual Section 504 plan was not implemented at the beginning of her freshman year. As a result of her ADD, Kate had difficulty learning from her biology teacher, Ms. Blanton-Glorioso. No accommodations were made for Kate's difficulties in biology. Kate sought to change biology teachers after Ms. Blanton-Glorioso lost an assignment Kate had turned in, but her guidance counselor, Jon Mamula, refused to allow Kate to switch, although, other nondisabled students who made similar requests were allowed to transfer classes. Kate struggled in biology and math.

Kate received a failing grade for the first six weeks of the 2013-14 academic year in biology. Kate was a member of the Cheer Squad. As a result of failing biology, she was unable to participate on the Cheer Squad for three weeks. The Dabneys requested a meeting to address Kate's failing grade and the other course in which she was struggling. On October 15, 2013, HPISD convened a Student Study Team ("SST") meeting pursuant to Section 504, and the attendees discussed the accommodations that would be available to Kate. There was no discussion of her failing grade. At the meeting, the Dabneys were informed that Kate would be given

preferential seating near the focus of the lesson, up to fifty per cent extended time taking test, and assistance in breaking down long term assignments into manageable parts with due dates. A member of the special education department was assigned to meet with Kate once a week to assist her with study skills, comprehension of assignments, and communication with teachers. HPISD personnel discouraged the Dabneys from hiring outside tutoring at their expense when they inquired about securing a tutor.

Kate's academic performance began to deteriorate following the October 2013 SST meeting. Kate's seating was not changed in most cases, and the meetings with members of the special education department did not provide the promised assistance. The Dabneys contacted the district several times to find out why the accommodations were not being implemented as promised. The tutorials provided by HPISD were not helpful, and Kate was not counseled on how to use the extra time to take tests or secure preferred seating. Shelby followed up with Jon Mamula on December 5, 2013, and was unaware of Kate's academic standing and had not been monitoring the implementation of her 504 plan. Beginning in December of 2013, the Dabneys hired three tutors at their own expense to address Kate's disability and assist her academic performance. Kate failed biology and math the third six weeks.

Kate was no longer eligible to participate on the Cheer Squad in the spring semester of her freshman year because she received failing grades for two six weeks in the fall semester. She was moved from Cheer Squad to general physical education, a change in placement, without a meeting of the 504 committee. Kate was initially told that she could try out for the Fall 2014 Cheer Squad as long as she passed all of her classes in the first six weeks of the spring semester. Kate was later informed that she would need a 3.0 average for the semester prior to tryouts, in addition to passing grades in all her classes for the first six weeks of the spring semester.

**Memorandum Opinion and Order - Page 3**

In January 2014, the Dabneys requested an additional SST meeting.  At that meeting, they discovered that Kate had not been given preferential seating in most of her classes.  During the meeting, the Dabneys alleged that no meaningful attempt had been made to implement Kate's Section 504 Plan.  HPISD did not agree with their contention and did not consider changing Kate's grades.  The Dabneys indicated that they would pursue administrative remedies to address HPISD's failure to make reasonable accommodations for Kate.  Following the SST meeting, Marta Gott, the high school's Assistant Principal for Academic Affairs and Assessment changed Kate's general physical education grade from a "100" to "Passing."  The change lowered Kate's GPA for the Fall 2013 semester to below a 3.0.  Kate was unable to try out for the Fall 2014 Cheer Squad.  Another nondisabled student was allowed try out for Cheer Squad despite being disqualified from the Cheer Squad under the Cheerleader Constitution.

The Dabneys later filed an administrative action with HPISD to address Kate's removal from cheerleading but did not file a complaint on the Section 504 accommodation.  On March 4, 2014, they received the Level One Decision by certified letter, and no relief was afforded to Kate as to her change in placement.  The Dabneys appealed the Level One decision, and a Level Two meeting was held on March 7, 2014.  HPISD affirmed its previous decision.  The Dabneys attended a meeting to discuss the Level Two grievance hearing with HPISD's Director of Special Programs on April 1, 2014.  At that meeting, HPISD maintained that accommodations were provided for Kate.  Following that meeting, the Dabney's filed a grievance to address HPISD's failure to provide Section 504 accommodation.  The HPISD Level One Report purported to exonerate HPISD.  The Dabneys filed a Level Two appeal after agreeing to forgo the Level One appeal.  The Level Two Grievance Hearing was held May 29, 2014.  According to Plaintiffs, a June 9, 2014 certified letter arrived at erroneous conclusions regarding the situation, and they filed suit because

HPISD's administrative process rubberstamped previous decisions and did not address or correct any failures regarding Kate's 504 plan.

Defendants move for dismissal of Plaintiffs' Original Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.      Legal Standards

### A.      Rule 12(b)(1) – Subject Matter Jurisdiction

A federal court has subject matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States," or over civil cases in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and in which diversity of citizenship exists between the parties.   28 U.S.C. §§ 1331, 1332.   Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim.  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (citations omitted); *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).  Absent jurisdiction conferred by statute or the Constitution, they lack the power to adjudicate claims and must dismiss an action if subject matter jurisdiction is lacking.  *Id.*; *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)).  A federal court must presume that an action lies outside its limited jurisdiction, and the burden of establishing that the court has subject matter jurisdiction to entertain an action rests with the party asserting jurisdiction.  *Kokkonen*, 511 U.S. at 377 (citations omitted).  "[S]ubject-matter jurisdiction cannot be created by waiver or consent."  *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001).

Federal courts may also exercise subject matter jurisdiction over a civil action removed from a state court.  Unless Congress provides otherwise, a "civil action brought in a State court of

which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

A federal court has an independent duty, at any level of the proceedings, to determine whether it properly has subject matter jurisdiction over a case.  *Ruhgras AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level.");  *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005) (A "federal court may raise subject matter jurisdiction *sua sponte*.") (citation omitted).

In considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001) (citation omitted).  Thus, unlike a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court is entitled to consider disputed facts as well as undisputed facts in the record and make findings of fact related to the jurisdictional issue.  *Clark v. Tarrant Cnty.*, 798 F.2d 736, 741 (5th Cir. 1986).  All factual allegations of the complaint, however, must be accepted as true. *Den Norske Stats Oljeselskap As*, 241 F.3d at 424.

**B.      Rule 12(b)(6) - Failure to State a Claim**

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).  A claim meets the plausibility test "when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted).  The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted).  When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).  Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp*., 987 F.2d 429, 431 (7th Cir. 1993)).  In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court

**Memorandum Opinion and Order - Page 7**

in ruling on a 12(b)(6) motion.  *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted).  Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record.'"  *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff.  *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002).  While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted).  Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions.  *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim.  *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).  Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted.  *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc).  Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge.  *Adams*, 556 F.2d at 293.

### III.    Analysis

#### A.  Defendant Dawson Orr

Orr moves for dismissal of all claims asserted against him because they are redundant of the claims asserted against HPISD.  Orr asserts that he was sued in his official capacity as superintendent of HPISD, and official capacity claims are duplicative and redundant when the governmental entity for which the official works is also a named defendant.  In response, Plaintiffs contend that Orr is subject to individual liability because he was acting in his capacity in promulgating the policies and procedures that are the basis of the suit.

A lawsuit against an individual in his official capacity is treated as a lawsuit against the governmental entity of which the individual is an agent, employee, official, or representative. *Hafer v. Melo,* 502 U.S. 21, 25 (1991) (citation omitted). Here, HPISD is a named party to this action, and Plaintiffs allege that Orr is responsible for his actions *as* Superintendent.  The court determines that the official capacity claims against Orr are duplicative and unnecessary.  *See Castro Romero v. Becken*, 256 F.3d 349, 354 (5th Cir. 2001) (holding that the district court was correct in dismissing claims brought against officers in their official capacity that were duplicative of the claims brought against the governmental entities); *see also Clark v. La Marque Indep. Sch. Dist.*, 54 F. App'x 412 (5th Cir. 2002).  Accordingly, the court will dismiss all claims against Orr with prejudice.

#### B.  Plaintiffs' THRC Claim

HPISD moves to dismiss Plaintiffs' THRC claim because Kate does not allege that she was denied the "use and enjoyment" of Highland Park High School.  Tex. Hum. Res. Code § 121.003(a).  HPISD contends that Kate's allegations relate to her academic performance, not her

use of the high school facilities.  In response, Plaintiffs assert that the code should be interpreted to include more than physical access to buildings.

Section 121.003 of the THRC provides that "[p]ersons with disabilities have the same right as persons without disabilities to the full use and enjoyment of any public facility in the state[,]" and "[n]o person with a disability may be denied admittance to any public facility in the state because of the person's disability."  Tex. Hum. Res. Code § 121.003(a) & (c).  By its own terms, the THRC applies to the admission and access to public facilities.  *See Sadik v. University of Houston,* No. CIV.A. H-03-4296, 2005 WL 1828588, at *9 (S.D. Tex. Aug. 1, 2005) (holding that the THRC applies primarily to physical access to public facilities for disabled individuals). Plaintiffs do not allege that Kate was ever denied physical access to the building, and they do not cite any authority that broadens the scope of the code to the extent they seek.  Such an expansion of the code is for the legislature, not the court, to pursue.  Accordingly, the court determines that Plaintiffs fail to state a claim for which relief can be granted.  HPISD's Motion to Dismiss as to Plaintiffs' THRC is granted, and the claim will be dismissed.

### C.  Plaintiffs' Chapter 29 Claim

HPISD moves for dismissal of Plaintiffs' Chapter 29 claim because Kate is not an eligible student with a disability under the Individuals with Disabilities Education Act ("IDEA"), and therefore, she is not entitled to a FAPE. HPISD contends that Plaintiffs' claim reflects a misunderstanding between Kate's right to accommodations pursuant to her Section 504 plan and her eligibility for special education under the IDEA.  HPISD further asserts that even if Kate is entitled to a FAPE, Plaintiffs have not exhausted their administrative remedies and, therefore, this claim should be dismissed.  In response, Plaintiffs contend that Chapter 29 should be more broadly

construed to include accommodations pursuant to Section 504 and that they have exhausted their administrative remedies.

Texas effectuates its requirements and obligations under the IDEA through its statutory and regulatory scheme promulgated pursuant to Chapter 29. Tex. Educ. Code §§ 29.001 *et seq.*; 19 Tex. Admin. Code § 89.1001. A purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs . . . ." 20 U.S.C. § 1400(d)(1)(A). Pursuant to the IDEA, the education of children with disabilities must be tailored to the child through an individualized education plan ("IEP"). 20 U.S.C. § 1401(a)(20); *Cypress-Fairbanks Ind. Sch. Dist. v. Michael F. by Barry F.*, 118 F.3d 245 (5th Cir. 1997). "Only certain students with disabilities, however, are eligible for IDEA's benefits. Specifically, to qualify for special education services, a student must: (1) have a qualifying disability and (2) 'by reason thereof, need [ ] special education and related services.'" *Alvin Indep. Sch. Dist. v. A.D. ex rel. Patricia F.*, 503 F.3d. 378, 382 (5th Cir. 2007) (*quoting* 20 U.S.C. § 1401(3)(A)).

Before Plaintiffs can bring a claim based on the IDEA, they must first exhaust the state administrative proceedings set forth in the statute. 20 U.S.C. § 1415(l); *Gardner v. School Bd. of Caddo Parish*, 958 F.2d 108, 111 (5th Cir. 1992). "The IDEA's exhaustion requirement serves a number of policy objectives: . . . allows deference to agency expertise in resolving educational matters; it gives the agency a first opportunity to correct errors; . . . presents courts with a more fully developed record; and . . . prevents parties from deliberately disregarding the statute's comprehensive procedures and remedies." *Marc V. v. N.E. Indep. Sch. Dist.,* 455 F. Supp. 2d 577, 592 (W.D. Tex. 2006); *see also Papania-Jones v. Dupree,* 275 F. App'x 301, 303-04 (5th Cir. 2008) ("By failing to exhaust the IDEA's administrative remedies, the Jones family did not give

the State an appropriate opportunity to resolve their complaints prior to filing suit against the State.")   The IDEA prevents Plaintiffs from circumventing the administrative exhaustion requirement by taking claims that could have been brought pursuant to the IDEA and repackaging them as claims under other statutes.  *Marc V.,* 455 F. Supp. 2d at 592.  Plaintiffs have the burden of proof to show that exhaustion would be futile.  *Papania-Jones,* 275 F. App'x at 303.

"The IDEA should not be construed so broadly that any injury a disabled student suffers in school is automatically subject to the IDEA."  *Pagan–Negron v. Seguin Indep. Sch. Dist.,* 974 F. Supp. 2d 1020, 1028 (W.D. Tex. 2013).  Accordingly, when a plaintiff "does not allege deprivation of certain educational services . . . does [not] seek remedies that are educational in nature," or alleges a "pure discrimination claim" or "non-education injuries" that cannot "be redressed by the IDEA's administrative procedures and remedies," the IDEA exhaustion requirement does not apply.  *Id.*

Plaintiffs allege that they exhausted their administrative remedies because they brought their complaints to the District's administrative review process.  In response to HPISD's motion to dismiss, Plaintiffs further assert that any attempt to exhaust their administrative remedies would be futile because the HPISD stated that Plaintiffs had exhausted Kate's administrative appeals and invited them to file a lawsuit in federal court.  Plaintiffs point to a number of letters between Plaintiffs' and Defendants' counsel attached to the Complaint.  Although the letters do refer to HPISD's appeal and administrative process, they do not reference the state's administrative process pursuant to the Texas Administrative Code.  The court determines that Plaintiffs have not

exhausted their state administrative remedies.[1]  Accordingly, Plaintiffs' Chapter 29 claim will be

dismissed for lack of subject matter jurisdiction.[2]

### D.  Plaintiffs' Section 504 and ADA claims

Plaintiffs allege that HPISD discriminated against Kate on the basis of her disability

because it failed to provide her a FAPE and denied her the right to participate in or benefit from

the service, programs, or activities at HPISD, specifically, cheerleading.   HPISD moves for

dismissal of Plaintiffs' Section 504 and ADA claims because Section 504 does not provide for a

private cause of action for the denial of a FAPE; Plaintiffs failed to exhaust their administrative

remedies; and Plaintiffs fail to show intentional discrimination.   In response, Plaintiffs contend

that there is a private cause of action under Section 504 for the denial of a FAPE, that HPISD

failed to reasonably accommodate Kate's disability, and that they have exhausted their

administrative remedies.

The language of Title II of the ADA generally tracks the language of Section 504, and

"Congress' intent was that Title II extend the protections of the Rehabilitation Act to cover all

programs of state or local governments, regardless of the receipt of federal financial assistance and

---

[1]  The Texas Education Code has its own requirement to exhaust administrative remedies.  Tex. Educ. Code Ann. § 7.057.  Texas law requires a party bringing a claim about the administration of school laws to exhaust the statutorily provided administrative remedies with the commissioner of education before turning to the courts for relief. *Jones v. Clarksville Indep. Sch. Dist.*, 46 S.W.3d 467, 471 (Tex. App.—Texarkana 2001).  The Texas Education Agency's ("TEA") administrative remedies for special education services are promulgated in the Texas Administrative Code and mirror those provided pursuant to the IDEA.  19 Tex. Admin. Code § 89.1150 *et seq.*

[2]   Although HPISD contends that Plaintiffs did not exhaust their administrative remedies, it did not seek dismissal pursuant to Rule 12(b)(1).  The IDEA's exhaustion requirement has been interpreted as jurisdictional. *Gardner,* 958 F.2d at 112 ("[A] complaint based on [the IDEA] is not a justiciable controversy until the plaintiff has exhausted his administrative remedies[.]"); *see also Polera v. Board of Educ. of Newburgh Enlarged City Sch. Dist.,* 288 F.3d 478, 483 (2d Cir.2002) ("A plaintiff's failure to exhaust administrative remedies under the IDEA deprives a court of subject matter jurisdiction.  The court, therefore, *sua sponte* dismisses Plaintiffs' Chapter 29 claim pursuant to Rule 12(b)(1), as the court has an independent duty to determine whether it has subject matter jurisdiction over a claim.

**Memorandum Opinion and Order - Page 13**

that it work in the same manner as Section 504." *Hainze v. Richard,* 207 F.3d 795, 799 (5th Cir. 2000) (internal quotation and citations omitted). Title II specifically provides that "[t]he remedies, procedures and rights" available under Section 504 shall be the same as those available under Title II. 42 U.S.C. § 12133. Case law interpreting either section is applicable to both; accordingly, the court will evaluate Plaintiffs' ADA and Section 504 claims together.

### 1.  Failure to Exhaust Administrative Remedies

Defendants contend that Plaintiffs' ADA and Section 504 claims must be dismissed for failure to exhaust state administrative remedies. Plaintiffs assert that they have exhausted their administrative remedies. The court has already determined that Plaintiffs did not exhaust their state administrative remedies to satisfy their Chapter 29 claim. If the action was brought pursuant to the IDEA, failure to exhaust would subject the IDEA claim and all claims related to the IDEA claim to dismissal for failure to exhaust. *Hooker v. Dallas Indep. Sch. Dist.*, No. 3:09-CV-1289-D, 2010 WL 4025877, at *6 (N.D. Tex. Oct. 13, 2010). Plaintiffs, however, have not asserted an IDEA claim in their Compliant. The IDEA does not limit the rights and remedies available under the ADA or the Rehabilitation Act, "except that before filing of a civil action under such laws seeking relief that is also available . . . the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought" under the IDEA. 20 U.S.C. § 1415(l). As previously stated, Plaintiffs cannot circumvent the IDEA's administrative exhaustion requirements by repackaging their claims under other statutes.

### 2.  Intentional Discrimination and Retaliation

The Fifth Circuit has recognized a private right of action for violations of Title II of the ADA and Section 504. *Frame v. City of Arlington,* 657 F.3d 215 (5th Cir. 2011) ("It is established that Title II of the ADA and [Section] 504 of the Rehabilitation Act are enforceable through an

implied private right of action.")  Section 504 provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of . . . his disability, be excluded from the participation, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

"A cause of action is stated under § 504 when it is alleged that a school district has *refused* to provide reasonable accommodation for the handicapped plaintiff to receive the full benefits of the school program."  *D.A. ex rel Latasha A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 454 (5th Cir. 2010)  (emphasis in original)  (internal citation omitted).   To demonstrate disability discrimination in an educational context, "something more than a mere failure to provide a fair, appropriate public education under the IDEA must be shown."  *Bennet-Nelson v. Louisiana Bd. of Regents,* 431 F.3d 448, 454 (5th Cir. 2005).  Section 504 does not create "a general tort liability for educational malpractice."  *D.A.,* 629 F.3d at 454.  Plaintiffs' discrimination claims are based on an alleged failure to provide Kate with a FAPE.  The IDEA contains a FAPE provision.  20 U.S.C. § 1412.  This allegation seeks relief that is available pursuant to the IDEA, and is, therefore, subject to the IDEA's exhaustion equipment.  *Ripple v. Marble Falls Indep. Sch. Dist.*, 99 F. Supp. 3d 662, 686 (W.D. Tex. 2015).  Plaintiffs' retaliation claims also relate to the alleged failure to provide Kate with a FAPE and are also subject to the IDEA's exhaustion requirement.  Accordingly, Plaintiffs' claims pursuant to the ADA and Section 504 are dismissed for lack of subject matter jurisdiction for failure to exhaust administrative remedies.

### E.  Plaintiffs' IIED Claim

HPISD moves for dismissal of Plaintiffs' common law IIED claim because the school district has governmental immunity and is protected from suit for tort liability.  The court agrees the HPISD is entitled to governmental immunity on this claim.  In response, Plaintiffs request permission to amend their pleadings and asserts claims from mental anguish damages pursuant to the ADA and Section 504 of the Rehabilitation Act.  In any event, the Texas Tort Claim Act specifically states that a governmental entity cannot be liable for any intentional tort.  Tex. Civ. Prac. & Rem. Code § 101.057.  By definition, IIED is an intentional tort, and therefore, HPISD is immune from liability.  Plaintiffs concede that HPISD has governmental immunity on their IIED claim.  Accordingly, Plaintiffs' IIED claim against HPISD will be dismissed with prejudice.

### F.  Plaintiffs' Constitutional Claims

Plaintiffs contend that HPISD executed an official custom or policy, approved by the final policymaker, Orr, which deprived them of their protected rights, namely, Kate's right to participate in cheerleading.  Plaintiffs allege that Orr acted with deliberate indifference.  Plaintiffs further allege that Kate was intentionally treated differently from others similarly situated to her because a nondisabled student was allowed to try out for cheerleading when Kate was not allowed to tryout.  They contend that there was no rational basis for difference treatment between Kate and the nondisabled student.  Defendant HPISD moves for dismissal of Plaintiffs' due process and equal protection claims brought pursuant to 42 U.S.C. § 1983 because Plaintiffs do not establish that Kate was deprived of a recognized liberty or property interest, and they do not allege facts to support their equal protection claim.

### 1.   Municipal Liability Pursuant to §1983

A governmental entity can be sued and subjected to monetary damages and injunctive relief under section 1983 only if its official policy or custom causes a person to be deprived of a federally protected right. *Board of the County Comm'rs of Bryan Cty. v. Brown,* 520 U.S. 397, 403 (1997); *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). A governmental entity *cannot* be liable for civil rights violations under a theory of respondeat superior or vicarious liability. *Id. See also Baskin v. Parker,* 602 F.2d 1205, 1208 (5th Cir. 1979). Official policy is defined as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [school district] lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of [school district] officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents [school district] policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the [school district] or to an official to whom that body had delegated policy-making authority.

*Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir. 1984) (*en banc*) (per curiam); *Bennett v. City of Slidell,* 735 F.2d 861, 862 (5th Cir. 1984) (*en banc*) (per curiam). A plaintiff must identify the policy, connect the policy to the governmental entity itself, and show that his injury was incurred because of the application of that specific policy. *Bennett v. City of Slidell,* 728 F.2d 762, 767 (5th Cir. 1984). A plaintiff must establish that the governmental entity through its deliberate conduct "was the moving force behind the injury alleged" and must establish a direct causal link between the governmental entity's action and the deprivation of a federally protected right. *Bryan County v. Brown,* 520 U.S. at 404.

Liability must rest on official policy, meaning the governmental entity's policy, and not the policy of an individual official. *Bennett,* 728 F.2d at 769. The official complained of must possess

> [f]inal authority to establish [school district] policy with respect to the action ordered. . . . The official must also be responsible for establishing final government policy respecting such activity before the [school district] can be held liable . . . . [W]hether an official had final policymaking authority is a question of state law.

*Pembaur v. City of Cincinnati,* 475 U.S. 469, 481-482 (1986). An employee, agency, or board of a governmental entity is not a policymaker unless the governmental entity, through its lawmakers, has delegated exclusive policymaking authority to that employee agency or board and *cannot* review the action or decision of the employee, agency or board. *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988); *Worsham v. City of Pasadena,* 881 F.2d 1336, 1340-41 (5th Cir. 1989).

The policy or custom relied upon to establish liability may include the inaction of official policymakers, but only when such inaction constitutes "deliberate indifference" to the rights of the plaintiff, and such indifference is a "closely related" cause of the plaintiff's injuries. *City of Canton v. Harris,* 489 U.S. 378, 388-91 (1989). In the context of municipal liability, to constitute deliberate indifference, the failure or inaction "must amount to an intentional choice, not merely an unintentionally negligent oversight." *Rhyne v. Henderson County,* 973 F.2d 386, 392 (5th Cir.1992) (citing *City of Canton,* 489 U.S. at 390). In other words, "the constitutional standard of conduct must step up from negligence-that [is,] it must be more than mere or even gross negligence." *Hare v. City of Corinth, Miss.,* 74 F.3d 633, 645 (5th Cir. 1996) (*en banc*). The terms "gross negligence" and "deliberate indifference" are sometimes confused and interchanged; however, "deliberate indifference" is a stricter standard." *Doe v. Taylor Indep. Sch. Dist.,* 15 F.3d

443, 453 n.7 (5th Cir. 1994) (en banc) (citation omitted).  "'Gross negligence' is a heightened degree of negligence, whereas 'deliberate indifference' is a 'lesser form of intent.'"  *Id.*

Pursuant to state law, the board of trustees, not the school district or superintendent, is the final policymaker. Tex. Educ. Code. §§ 11.051 & 11.151.  *See also Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d. 745, 753 (5th Cir. 1993).  Here, Plaintiffs do not allege that HPISD Board of Trustees has delegated exclusive policymaking authority to Orr.  Thus, Orr, as a matter of law is not a policymaker.  Further, Plaintiffs do not cite to any specific custom or policy from which the court can reasonably infer municipal liability as to Plaintiffs' constitutional claims.  Accordingly, Plaintiffs' claims pursuant to §1983 will be dismissed.  In any event, even if the court could find municipal liability, Plaintiffs' due process and equal protection claims still fail to state a claim upon which relief can be granted.

### 2.  **Plaintiffs' Due Process Claim**

In its Motion to Dismiss, HPISD contends that Plaintiffs have not established a legitimate claim of entitlement to a property or liberty interest.  It asserts that Plaintiffs have not alleged that Kate was deprived of her right to an education by means of physical exclusion, and that Plaintiffs' concern with the implementation of Kate's Section 504 plan are insufficient to making the requisite showing.  It further contends that Kate has no liberty or property interest in participating in cheerleading.  In response, Plaintiffs assert that physical exclusion is not the sole basis for deprivation of Kate's right to an education.  Plaintiffs further assert that they have "repeatedly pointed out HPISD's failures to provide a public education."  Pls.' Resp. to D.'s Mot. to Dismiss. ¶ 7.01.  Plaintiffs' Complaint, however, only alleges that HPISD failed to properly implement Kate's Section 504 Plan.  Plaintiffs cannot pursue their Section 504 claims pursuant to §1983. *D.A.*, 629 F.3d at 457 ("Congress created a specific and comprehensive enforcement mechanism

under [Section] 504 to ensure the rights of the disabled persons, the presumption controls against invoking a more general remedial scheme to vindicate those rights.")  Accordingly, insofar as Plaintiffs attempt to bring their §1983 claim based on alleged Section 504 violations, Defendants' Motions to Dismiss will be granted, and Plaintiffs' §1983 claim will be dismissed.

The court disagrees with Plaintiffs' contention that Kate has a property or liberty interest in cheerleading.  A student does not have a protected interest in "the separate components of the educational process," including participation in extracurricular activities.  *Nevares v. San Marcos Consol. Indep. Sch. Dist.*, 111 F.3d 25, 26 (5th Cir. 1997); s*ee also Nile v. University Interscholastic League*, 715 F.2d 1027, 1029 (5th Cir. 1983); *Walsh v. Louisiana High Sch. Athletic Ass'n,* 616 F.2d 152, 159 (5th Cir. 1980); and *Mitchell v. Louisiana High Sch. Athletic Ass'n*, 430 F.2d 1155, 1157-58 (5th Cir. 1970).  Accordingly, insofar as Plaintiffs assert that Kate has a protected interest in participating in cheerleading, HPISD's Motion to Dismiss will be granted, and Plaintiffs' §1983 claim will be dismissed.

Plaintiffs cite *S.M. ex rel G.M. v. School District of Upper Dublin*, No. CIV.A. 10-4038, 2011 WL 3678325 (E.D. Pa. Aug. 18, 2011), to support their contention that Kate has a protected right to participate in cheerleading.  Plaintiffs' reliance on this case is misplaced.  Plaintiffs' cherry-picked quotations do not support their contention that Kate has a liberty or property interest in an extracurricular activity.  In the portion of *S.M. ex rel G.M.* quoted by Plaintiffs, the court was discussing the "significant issue" element of the "Prevailing Party Doctrine" pursuant to Section 504 and quoting a report from a hearing officer with the Upper Dublin School District.  *Id.* at *2-3.  That court was not addressing the student's property or liberty right to participate in extracurricular activities, nor was it espousing that all students had such a right.  That court was simply quoting and evaluating a hearing officer's findings that a student with severe peanut and

**Memorandum Opinion and Order - Page 20**

tree nut allergies should be able to safely attend his elementary school.  Plaintiffs are not being forthright with the court, and the court is troubled by their attempt to mislead it through the misapplication of case law.

### 3.  Plaintiffs' Equal Protection Claim

HPISD also moves for dismissal of Plaintiffs' equal protection claim because they fail to plead that similarly situated students were treated differently without a rational basis.  Plaintiffs respond that there is discrimination as to the different standards applied in determining whether a disabled versus a nondisabled student is eligible to try out for cheerleading.  They further respond that their equal protection claim can encompass negligent training, supervision, and staffing.

To bring a class of one equal protection claim, Plaintiffs "must establish (1) [s]he was intentionally treated differently from others similarly situated and (2) there was no rational basis for any such difference." *Wilson v. Brinberg*, 667 F.3d 591, 599 (5th Cir. 2012) (internal citations and quotations omitted).  Here, Plaintiffs have alleged that a nondisabled student was allowed to try out for cheerleading when Kate was not allowed to try out, but they do not allege that the student was similarly situated to Kate.  Plaintiffs have not alleged sufficient facts for the court to conclude that the nondisabled student is an appropriate comparator.  Further, Plaintiffs do not allege facts that show there was no rational basis for the difference in treatment between Kate and the nondisabled student.  Moreover, Plaintiffs have not shown that this alleged injury occurred as a result of an unconstitutional policy or custom of HPISD.

Accordingly, as Plaintiffs have not alleged that they were deprived of a protected right that can be pursued pursuant to §1983, or that Kate was intentionally treated differently than others similarly situated without a rational basis, the court determines that they fail to state a claim upon which relief can be granted.  Defendants' Motions to Dismiss will be granted on this claim.

**Memorandum Opinion and Order - Page 21**

### G.  Scott and Shelby Dabney's Individual Claims

HPISD also moves for dismissal of claims brought by Scott and Shelby Dabney's in their individual capacity because they have not alleged a disability giving rise to a claim under Section 504, the ADA, or the THRC, and they have not alleged that HPISD deprived Scott or Shelby of any constitutionally protected rights under the Fourteenth Amendment.  HPISD also seeks dismissal of Plaintiffs' claims to the extent that they seek relief for students other than Kate.  In response, Plaintiffs assert that Scott and Shelby do have individual claims for expenses incurred as a result of HPISD's alleged failure to adequately implement Kate's Section 504 plan, emotional distress for HPISD's intentional acts, and retaliation.

The ADA and the Rehabilitation Act prohibit public entities from discriminating against an individual based on his or her disability; the individual must show that he was excluded from, or denied benefits, based on his or her disability.  *See* 42 U.S.C. § 12132; 29 U.S.C. § 794(a).  The THRC prohibits public entities from denying access to public areas on the basis of disability.  Tex. Hum. Res. Code § 121.003.  Plaintiffs do not allege that Scott and Shelby are disabled or were denied services, benefits, or access to public facilities on the basis of a disability.  Plaintiffs do not allege that Scott and Shelby suffered any constitutional harms.  Further, Plaintiffs also do not allege that Scott and Shelby were retaliated against for any protected activity.  Accordingly, the court determines that Scott and Shelby have not stated any claims for which relief can be granted as to their individual claims.  Further, insofar as the Complaint seeks relief for students other than Kate, Plaintiffs do not have standing to seek such relief.  Accordingly, Scott and Shelby Dabney's individual claims will be dismissed.

IV.     **Amendment of Pleadings**

In response to Defendant's Motion to Dismiss, Plaintiffs requested to amend their pleadings in the event the court determined that they failed to state claims upon which relief can be granted.  The provision of Rule 15(a)(2) of the Federal Rules of Civil Procedure that states "[t]he court should freely give leave when justice so requires" is not without limitation.  The decision to allow amendment of a party's pleadings is within the sound discretion of the district court.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) (citation omitted). In determining whether to allow an amendment of the pleadings, a court considers the following: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182; *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted).

Plaintiffs have not previously amended their pleadings.  The court has ruled that the Chapter 29, ADA, and Section 504 claims are dismissed for lack of subject matter jurisdiction. Plaintiffs cannot bring these claims until they have exhausted their administrative remedies; that has not occurred and an amendment of the pleading serves no purpose, as the court would not have jurisdiction to entertain these claims any attempt to amend them would be futile.  The court has ruled that the IIED claim is barred by governmental immunity, therefore, any attempt to amend that claim would be futile.  As the court has ruled that the due process claim and claims against Orr fail as a matter of law, any attempt to amend these claims would also be futile.  Further, as the court has ruled that the THRC claim refers to physical access, and not the denial of a FAPE as alleged, no amount of artful or creative pleading of facts will permit them to state claims upon

**Memorandum Opinion and Order - Page 23**

which relief can be granted.  Accordingly, the court will not allow Plaintiffs an opportunity to amend their pleadings as to these claims.  The court will allow Plaintiff to file an amended complaint as to their equal protection claim brought pursuant to 42 U.S.C. § 1983.  In this regard, Plaintiffs must plead sufficient facts to show that this injury occurred because of an HPISD policy or custom.  The amended complaint shall cure the deficiencies identified herein by the court.

## IV.    Conclusion

For the reasons stated herein, the court **grants** Orr's Motion to Dismiss Plaintiffs' Original Complaint and **grants** HPISD's Motion to Dismiss Plaintiffs' Original Complaint.  Plaintiffs **shall amend** their Original Complaint in accordance with the court's instructions as herein set forth, and **shall file** the amended complaint **no later than 5:00 p.m., April 14, 2016**.  Plaintiffs' Chapter 29, ADA, and Section 504 claims are **dismissed without prejudice** for lack of subject matter jurisdiction; their THRC claim is **dismissed without prejudice**; and their claims against Orr, their IIED claim, and due process claim are **dismissed with prejudice**.

**It is so ordered** this 31st day of March, 2016.

Sam A. Lindsay
United States District Judge